[Cite as *State v. Seidel*, 2025-Ohio-595.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 2024AP0005 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JESSE SIEDEL | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2023 CR-B 000154 |

DECISION AND JOURNAL ENTRY

Dated: February 24, 2025

---

FLAGG LANZINGER, Judge.

{¶1} Jesse Siedel appeals his conviction for disorderly conduct from the Wayne County Municipal Court. For the following reasons, this Court affirms.

I.

{¶2} Siedel was charged with one count of disorderly conduct in violation of R.C. 2917.11(A)(1), a fourth-degree misdemeanor. Siedel pleaded not guilty and the matter proceeded to a bench trial.

{¶3} At the bench trial, the State presented testimony from two witnesses: a police officer and a nurse. The officer testified that he was dispatched to Wooster Community Hospital on a call for a disorderly patient. Upon arrival, the officer learned that Siedel had been "pink slipped[,]" and explained that the emergency room physician had ordered Siedel to be transferred to a facility in Columbus for a mental health evaluation. The officer testified that he did not know

the reason Siedel had been pink slipped. The officer explained that pink slips are issued for a variety of reasons, including expressing suicidal or homicidal ideations.

{¶4} The officer testified that Siedel refused to move from his bed and engaged in verbally aggressive behavior toward hospital staff and other officers. The officer testified that he, other officers, and hospital staff tried to remove Siedel from the bed, but Siedel resisted by wrapping his arms around the bed rail. The officer testified that another officer had to "dry stun" Siedel in the stomach, which allowed officers and hospital staff to restrain Siedel and move him onto a gurney. Seidel was then transported to the Wayne County Jail.

{¶5} The nurse testified that he did not know why Siedel initially presented to the hospital. The nurse testified that an ER physician ordered Siedel to be transferred to another facility because Siedel needed psychiatric care that the hospital did not provide. The nurse testified that it was his job to communicate this information to Siedel. The nurse testified that Siedel became verbally and physically combative, wrapped his arms around the bed rail, and refused to move. The nurse testified that Siedel ignored repeated requests to stop resisting and cooperate, and that Siedel eventually spit in his face. The nurse testified that it took multiple healthcare professionals and officers to subdue Siedel, which took about five minutes. The nurse also testified that an ER physician evaluated him after Siedel spit on him.

{¶6} The State played the officer's bodycam video at trial, which corroborated the officer and the nurse's testimonies. The video shows Siedel wrapping his arms around the bed rail, refusing to let go, and becoming verbally and physically aggressive when officers and hospital staff attempted to remove Siedel from the bed. The video also shows an officer "dry stun" Siedel in the stomach, which allowed officers and hospital staff to restrain Siedel and move him onto a gurney. The video further shows Siedel continuing to engage in verbally aggressive behavior—

including making threats toward the nurse—after he was removed from the bed, placed on a gurney, and restrained with arm and leg straps.

**{¶7}** After hearing the evidence, the trial court found Siedel guilty of disorderly conduct. The trial court sentenced Siedel to 15 days in the Wayne County Jail, imposed a $150 fine, and ordered Siedel to pay court costs. Siedel now appeals, raising three assignments of error for this Court's review.

ASSIGNMENT OF ERROR I

SIEDEL'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE.

**{¶8}** In his first assignment of error, Siedel argues that the State failed to present sufficient evidence in support of his conviction for disorderly conduct. Specifically, Siedel argues that the State failed to prove that either the officer or the nurse were inconvenienced, annoyed, or alarmed by his behavior, and failed to prove that he acted recklessly. For the following reasons, this Court overrules Siedel's first assignment of error.

**{¶9}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* The trier of fact is entitled to rely on direct, as well as circumstantial evidence. *See id.*

**{¶10}** R.C. 2917.11(A)(1) provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by . . . [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior . . . ." A person acts "recklessly" when:

> with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C). "[S]ince the fact-finder can never truly get inside the defendant's mind, mens rea is often proved by circumstantial evidence." *State v. Robertson*, 2024-Ohio-2848, ¶ 66 (9th Dist.), quoting *State v. St. John*, 2009-Ohio-6248, ¶ 21 (7th Dist.).

**{¶11}** Siedel's argument that the State failed to prove that either the officer or the nurse were inconvenienced, annoyed, or alarmed by his behavior lacks merit. The nurse and officer testified that it took about five to ten minutes to subdue Siedel because Siedel wrapped his arms around the bed rail and refused to move. The nurse also testified that Siedel ignored repeated requests to stop resisting and cooperate, and that Siedel eventually spit in his face. The nurse further testified that an ER physician evaluated him after Siedel spit on him.

**{¶12}** Additionally, the officer's bodycam video shows Siedel wrapping his arms around the bed rail, refusing to let go, and becoming verbally and physically aggressive when officers and hospital staff attempt to remove Siedel from the bed. The video also shows an officer "dry stun" Siedel in the stomach, which allowed officers and hospital staff to restrain Siedel and move him onto a gurney. The video further shows Siedel continuing to engage in verbally aggressive behavior—including making threats toward the nurse—after he was removed from the bed, placed on a gurney, and restrained with arm and leg straps. Viewing this evidence in a light most favorable to the State, this Court concludes that the State presented sufficient evidence to allow

the trier of fact to reasonably conclude the officer and/or the nurse were inconvenienced, annoyed, or alarmed by Siedel's behavior.

**{¶13}** Siedel's argument that the State failed to prove that he acted recklessly also lacks merit. Siedel argues that the evidence demonstrated that he has mental health issues that caused him to behave irrationally. Siedel concludes that these issues prevented him from being able to form the mens rea of recklessly. Siedel's argument sounds in diminished capacity, which is not a recognized defense in Ohio. *State v. Johnson*, 2019-Ohio-3314, ¶ 18 (9th Dist.) ("[Appellant's] argument that a mental illness prevented her from having the requisite mens rea for these offenses is essentially a diminished capacity argument, which is not a recognized defense in Ohio."). Given the limited argument presented, Siedel has not established that the State failed to prove that he acted recklessly. *See State v. Mastice*, 2007-Ohio-4107, ¶ 7 (9th Dist.) ("An appellant has the burden of demonstrating error on appeal."). In light of the foregoing, Siedel's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

> MR. SIEDEL'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION (CLAUSE XIV, SECTION 1, UNITED STATES CONSTITUTION).

**{¶14}** In his second assignment of error, Siedel argues that his conviction for disorderly conduct was against the manifest weight of the evidence. This Court disagrees.

**{¶15}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.

1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

**{¶16}** Siedel argues that his conviction was against the manifest weight of the evidence because the evidence demonstrated that he could not form the requisite mens reas of recklessness "due to his mental health condition . . . ." As explained in our resolution of Siedel's first assignment of error, diminished capacity is not a defense in Ohio. *Johnson*, 2019-Ohio-3314, at ¶ 18 (9th Dist.). Because Siedel's manifest weight argument is based solely on his purported inability to form the requisite mens rea "due to his mental health condition[,]" this Court concludes that he has failed to establish that his conviction was against the manifest weight of the evidence. *State v. Purefoy*, 2007-Ohio-371, ¶ 15 (9th Dist.) (rejecting the appellant's manifest weight argument premised upon the appellant's argument that he was "irrational at the time of the offenses . . . ."). Siedel's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

MR. SIEDEL RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶17}** In his third assignment of error, Siedel argues that his trial counsel rendered ineffective assistance by failing to plead not guilty by reason of insanity, and by not requesting a competency exam. For the following reasons, this Court disagrees.

**{¶18}** "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Siedel must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable

representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Siedel must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.).

{¶19} "Competency refers to a defendant's mental condition at the time of trial or plea, whereas the insanity defense refers to the defendant's mental condition at the time of the offense." *State v. Edwards*, 2023-Ohio-4173, ¶ 11 (12th Dist.). Specifically, "[a] defendant is legally incompetent if 'incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense.'" *State v. Braden*, 2003-Ohio-1325, ¶ 114, quoting R.C. 2945.37(G). "A person is 'not guilty by reason of insanity'. . . if the person proves . . . that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14).

{¶20} "Generally, a trial counsel's failure to seek a competency evaluation or pursue an insanity defense is not, per se, ineffective assistance of counsel." *Edwards* at ¶ 11. "It is only where the facts and circumstances indicate appellant did not understand the nature and objective of the proceedings and was incapable of assisting in his defense or otherwise indicate that a plea of not guilty by reason of insanity would have a reasonable probability of success that it is ineffective assistance of counsel to fail to pursue such a defense strategy." *Id.*

{¶21} Siedel's argument is premised upon the fact that he was "pink slipped" at the hospital, that he has "severe mental health issues," and that "he could be insane." Siedel also argues that his behavior during sentencing was a "clear indication that [his] behavior warranted a competency exam and not guilty by reason of insanity plea." Siedel then cites a portion of the

transcript wherein Siedel told the trial judge during sentencing that the witnesses had credibility issues, and that the officer's bodycam video did not depict all of the events that occurred.

**{¶22}** Siedel has failed to point to anything in the record to indicate that his trial counsel rendered ineffective assistance by failing to seek a competency evaluation or pursue an insanity defense. While the record reflects that Siedel was "pink slipped[,]" the record does not indicate why Siedel presented to the hospital, nor the reason the ER physician ordered a mental health evaluation. According to the nurse, Siedel needed psychiatric care that Wooster Community Hospital did not provide.

**{¶23}** Even if the record reflected that Siedel had a mental illness, "[m]ental illness . . . does not necessarily equate to incompetency." *State v. Dennison*, 2020-Ohio-2699, ¶ 21 (9th Dist.), citing *State v. Berry*, 72 Ohio St.3d 354 (1995), syllabus. As the Ohio Supreme Court has acknowledged, "[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). Likewise, having a mental illness does not necessarily equate to insanity. *State v. May*, 2008-Ohio-1731, ¶ 7 (1st Dist.).

**{¶24}** Here, Siedel has not pointed to any facts or circumstances in the record to indicate that he did not understand the nature and objective of the proceedings and was incapable of assisting in his defense. Nor has Siedel pointed to anything in the record to indicate that a plea of not guilty by reason of insanity would have had a reasonable probability of success. Accordingly, Siedel has not established that his trial counsel rendered ineffective assistance by failing to plead not guilty by reason of insanity and by not requesting a competency exam. *See Edwards*, 2023-Ohio-4173, at ¶ 11 (12th Dist.). Siedel's third assignment of error is overruled.

III.

**{¶25}** Siedel's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶26} I respectfully dissent in regard to the third assignment of error as I would sustain Sieldel's ineffective assistance claim.

{¶27} The evidence in this case showed that Siedel had been "pink slipped" at the time of the offense, meaning that he was under involuntary treatment for a mental illness. As a matter of fact, the incident that gave rise to this case occurred because the hospital Siedel was at could not provide the psychiatric treatment that he needed. Siedel refused to let go of his cot when the staff attempted to place him on a gurney so that he could be transported to an actual psychiatric hospital.

{¶28} Siedel's sole argument at trial was that he could not form the requisite intent to commit the crime of disorderly conduct due to his mental illness. Although diminished capacity is not a viable defense in Ohio, the defense of not guilty by reason of insanity is. Under the facts of this case, Siedel's attorney should have requested a mental evaluation to determine Siedel's sanity at the time of the offense and his competency to stand trial.

{¶29} I would reverse and remand.


APPEARANCES:

YU KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and TIMOTHY P. BOGNER, Assistant Prosecuting Attorney, for Appellee.